

DA 13-0375

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 333N

_____

VALMA TODD, a Protected Person,

        Petitioner and Appellant,

    v.

EDWARD TODD, individually and as

Trustee of the Robert L. Todd Sr. Trust,

        Respondent and Appellee.

_____

APPEAL FROM:     District Court of the Twentieth Judicial District,

                      In and For the County of Lake, Cause No. DV 13-72

                      Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

Julie R. Sirrs; Boone Karlberg, P.C.; Missoula, Montana

For Appellee:

Patrick D. Dougherty; Worden Thane P.C.; Missoula, Montana

Robert Long; Long Law Office; Polson, Montana

_____

Submitted on Briefs:  October 23, 2013

Decided:  November 8, 2013

Filed:

_____

Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Valma Todd (Valma) appeals the order of the Twentieth Judicial District Court, Lake County, denying her petition to remove the trustee of her family trust and to appoint a successor trustee. We affirm in part and reverse and remand in part.

¶3      Valma is the current beneficiary of the Robert L. Todd, Sr. Trust (Trust)—a trust established by her late husband Robert Todd (Robert) in 1976. As amended in 2002, the Trust's stated purpose is "to provide for the financial security for the Trustor and his wife VALMA B. TODD, and to provide for the ultimate distribution of the residue of the Trust Estate [equally to Robert's two sons and grandson]. . . ." Following payment of expenses of the Trust, the Trust document provides that "[a]ll income to the Trust . . . shall be available to the Trustor and his wife, and to the survivor, for their use and benefit for the remainder of their lifetimes . . . ." The Trust document allows invasion of the principal if the income is considered by the trustees to be insufficient for the support, maintenance and care of the beneficiary. In that case, the trustees are to pay such amounts from the principal "as the Trustees shall deem sufficient for such purposes." The Trust document further provides: "The Trustees may pay income or principal to the Trustor or beneficiary or for his or her benefit, and shall have no obligation to confirm the use of such payments to which the beneficiary may put such payments." In 2003, Robert created a separate document emphasizing the trustee's right to use the principal for the benefit of the beneficiary. It clarified that the Trust document "authorizes the Trustee(s) of said trust to use both

2

principal and income of said trust for the benefit of Trustor, Robert L. Todd, Sr. and his wife, Valma B. Todd during their lifetimes."  All the beneficiaries acknowledged and signed the clarification.

¶4 Robert died in 2004, leaving Valma as the sole primary beneficiary.  Edward Todd (Ed), Robert's grandson, became the sole trustee.  In 2008, after breaking her hip, Valma moved to California where two of her sisters could take care of her.  Although they originally agreed to care for Valma for the same amount of money that Ed's parents were being paid for that purpose, the sisters soon realized they needed an increase in funds.  Ed agreed to distribute $2,200 a month to cover Valma's care.  In January 2012, after apparently becoming concerned that the Trust assets were depleting too quickly, Ed notified the sisters that he would be decreasing his distribution to Valma to $1,100 per month.  Valma's third sister, Truella Hicks, joined the sisters in California and was appointed as Valma's conservator in January 2013.  Adult Protective Services (APS) of Montana was contacted to conduct an investigation of the Trust distributions.  Upon investigation, Janice Hinze of APS reported that Ed's refusal to provide sufficient distributions from the Trust to meet Valma's needs indicated elder financial exploitation and neglect.

¶5 Alleging numerous breaches of fiduciary duties, Valma filed a verified petition on March 19, 2013, to remove Ed as trustee and to appoint a successor trustee.[1]  The District Court held a hearing on the petition on April 10, 2013; Hinze and Ed testified and Hinze's report was admitted into evidence, along with the April 4, 2013 letter of Barnet G. Meltzer, M.D., a spreadsheet of expenses prepared by the sisters for APS, some expense receipts, and Ed's initial e-mail exchange with Valma's sister establishing $1,150 in monthly expenses.  The court issued its findings of fact, conclusions of law and

---

[1] Valma's counsel signed the verification in her absence.

order on May 7, 2013, denying all of Valma's requests. If Valma's conservator believes she needs additional funds, the District Court ordered that she provide all medical documentation to Ed, who then may choose a physician to make a recommendation as to her care and potential return to Montana if he determines those costs to be more reasonable.

¶6 We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law for correctness. *In re Baird*, 2009 MT 81, ¶ 7, 349 Mont. 501, 204 P.3d 703. A finding is clearly erroneous when it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or if, after reviewing the record, we are left with a firm conviction that a mistake has been made. *In re Guardianship of Saylor*, 2005 MT 236, ¶ 10, 328 Mont. 415, 121 P.3d 532. We review a district court's decision denying a petition to remove a trustee for abuse of discretion. *Baird*, ¶ 11. Interpretation of a trust agreement is a question of law, reviewed for correctness. *In re Charles M. Bair Family Trust*, 2008 MT 144, ¶ 32, 343 Mont. 138, 183 P.3d 61.

¶7 On appeal, Valma first argues that the District Court erred in determining that Ed did not breach his fiduciary duties, beginning with his duty to carry out the intent of the Trust and exercise his discretion reasonably. The District Court relied on what it considered conflicting letters from physicians—one stating that Valma suffered from a terminal diagnosis with less than a year to live and one stating that Valma was released from hospice care to complete physical therapy—and found that "no clear evidence was presented to the court that additional caregiver costs were even necessary." Upon review of the record, we conclude that the court misapprehended the effect of the evidence. First, the letters were not conflicting but instead sequential. The second letter, from Valma's primary care physician, explained her condition and specifically stated that she needed a caregiver twenty-four hours a day. Second, the court completely disregarded the evidence supplied from Hinze. Her report,

4

admitted into evidence by the court, stated that "Valma . . . cannot be left alone; someone must be with

her 24/7. She requires assistance to toilet, dress and groom herself . . . ." Hinze calculated that such

caregiver costs alone could be over $6,000 a month in Valma's locality. In light of the evidence

presented, the court's finding that increased caregiver costs had not been substantiated is clearly

erroneous.

¶8      The District Court also interpreted the Trust document incorrectly as a matter of law. Even

when a trust confers sole discretion in a trustee, the trustee "may not act in disregard of the purposes of

the trust." Section 72-34-130, MCA (2011). The trustor's intent controls our interpretation of a trust

agreement, and we attempt to discern the trustor's intent from the language of the entire trust, rather

than from a particular word or phrase. *Bair*, ¶ 32. In *Bair*, we held that viewing the trust document as a

whole, the primary purpose of the trust was to establish a museum even though the section of the trust

outlining its purpose spoke of a more general philanthropic mission. *Bair*, ¶ 35. Here, Ed argues and the

District Court concluded that because the Trust's purpose is dual—to provide for Valma for the rest of

her life and then be distributed to the remaindermen—Ed has a duty to preserve the Trust to fulfill both

purposes. While the Trust requires Ed to carry out both purposes, it is apparent that Valma's care

constitutes the primary purpose of the Trust. This is shown by the fact that it is a more specific purpose

than leaving a remainder interest to residuary beneficiaries, the Trust document does not restrict the

distributions to meet Valma's needs in order to save Trust assets for the remainder, and the Trustor

expressly clarified that the principal could be invaded for the benefit of the primary beneficiaries.

¶9      The court also incorrectly interpreted the phrase allowing invasion of the principal of the Trust

"as the Trustees shall deem sufficient for such purposes" to allow Ed unfettered discretion over Valma's

care. While a trustee has a duty to preserve trust property, § 72-34-107, MCA (2011), the court went so

far as to allow Ed to "choose a physician to evaluate Valma and make a recommendation as to the appropriate care and possible return to Montana, if such costs of care in Montana would be more reasonable . . . ." The Trust does not require that Valma live in Montana or accept the least expensive option for her care. Rather, the Trust's language suggests a more liberal distribution by stating that the trustee "shall have no obligation to confirm the use of such payments to which the beneficiary may put such payments" and by specifically allowing an invasion of the Trust's principal to care for Valma. Ed is not Valma's guardian or conservator, nor is he the arbiter of where she lives and who provides her medical care. It is evident from the testimony that there was considerable mistrust between Ed and the sisters, one of whom is Valma's conservator, regarding the uses to which the Trust distributions were being put. When asked by his counsel to justify his decision to cut the distributions in half, Ed answered that he returned to the $1,100 monthly distribution because "that was what I provided up here in Montana" five years earlier. Ed did not trust the sisters' representations regarding costs of rent and vitamins for Valma.

¶10 Whatever the source of mistrust between the family members, there was no evidence to contradict the opinion of Dr. Meltzer and the report of Ms. Hinze that Valma's present condition requires twenty-four hour care. The effect of the evidence admitted at hearing, along with the District Court's reading of the Trust document to give the trustee broader powers than it specifies, lead us to conclude that Ed breached his duty to administer the Trust according to the Trust instrument and to exercise his discretion reasonably for Valma's benefit. Valma articulates further reasons to find a breach of duty, but because such analysis will not change the outcome, we decline to address her additional arguments.

6

¶11    Valma also argues that the District Court erred in failing to remove Ed as Trustee.  Section 72-33-618(2)(a), MCA (2011), states that a trustee may be removed "if the trustee has committed a breach of the trust."  Even though removal is discretionary by the trial court, in light of our conclusion above and under the circumstances of this case, we conclude that the District Court should have removed Ed as trustee.  Although a remainder beneficiary is not automatically disqualified from managing a trust, the evident breakdown in communications, friction and hostility between Ed and Valma's caregivers (*see* Rst. (Third) of Trusts § 37(e)(1), Removal of Trustee), and the immediacy of the need to address objectively the amounts required for Valma's care and support call for appointment of an independent trustee.  We therefore reverse the ruling denying Ed's removal as trustee and remand to the District Court with instructions to appoint an appropriate, independent trustee.  We decline to name a successor trustee or to require the trust to reimburse Valma's legal fees and caregivers, as those are matters best determined, respectively, by the court on remand and by an independent trustee upon review of the Trust's assets.

¶12    Finally, Valma appeals the District Court's refusal to compel Ed to complete an accounting of the Trust for the years prior to 2012.  Valma asserts that the District Court's ruling is incorrect because § 72-34-126, MCA (2011), requires annual statements, and this requirement may only be waived in writing.  Section 72-34-127(3), MCA (2011).  The parties agree that Valma verbally waived Ed's requirement to provide annual accountings.  The District Court held that the failure to provide an annual accounting amounted to a "technical" violation that could be remedied by completing accountings for the succeeding years.  In light of our holding on the other issues, we need not address Valma's claim that prior accountings are needed to further explore Ed's breach of fiduciary duties as trustee.  We affirm the District Court's order requiring accountings to be completed only after 2012.

7

¶13    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal

Operating Rules, which provides for memorandum opinions.  It is manifest on the record before us that

the District Court erred in its interpretation and application of the Trust document and abused its

discretion in failing to remove Ed as trustee.  We therefore reverse and remand its denial of Valma's

petition to remove trustee, but we affirm its refusal to require that Ed provide accountings for the years

prior to 2012.


                                                    /S/ BETH BAKER


We concur:


/S/ MIKE McGRATH

/S/ PATRICIA COTTER

/S/ MICHAEL E WHEAT



Justice Jim Rice, concurring in part, and dissenting in part.


¶14    I concur with the majority's decision regarding accountings for prior years, however I dissent

from its holding on the remaining issues.

¶15    Whether a trustee has breached his or her fiduciary duty generally presents a question of fact.

*Bair*, ¶ 47.  Findings of fact must be upheld unless they are clearly erroneous.  "The evidence is reviewed

in the light most favorable to the prevailing party, and the credibility of witnesses and the weight

8

assigned to their respective testimony are up to the trial court." *In re Estate of Bradshaw*, 2001 MT 92, ¶ 11, 305 Mont. 178, 24 P.3d 211. It is the district court's place to weigh the evidence, and our standard is to determine whether substantial evidence supports the findings, not to determine whether the evidence would support other findings. *In re Estate of Bradshaw*, ¶ 20.

¶16 There was conflicting evidence presented in this case as to who was acting improperly. Valma presented evidence that Ed had acted improperly in denying her requests for additional funds, while Ed presented evidence that his refusal to pay the costs as demanded by Valma's sisters was due to lack of substantiation of costs and increasing concern that the money was not being applied to Valma's care. Specifically, the evidence presented demonstrated that Ed initially began to question the amounts requested when he learned that one of Valma's sisters was personally selling Valma vitamins at $200 per month, charging Valma $900 per month to rent a room in her house when she only charged the other roommates $350 per month, and had been writing checks to herself out of Valma's checking account (where the trust funds were deposited) as "loans" from the trust. Ed was further concerned that the significant amount of money requested for twenty-four hour care was to be paid directly to the sisters and other family members, not to a licensed caregiver, and the need for this twenty-four hour care was not substantiated by the sisters (the medical letters discussed at Opinion, ¶ 7, were presented for the first time at the hearing).

¶17 The District Court, after hearing all the evidence, determined that Ed's concerns due to the lack of substantiated costs were reasonable. The court found that "Ed's testimony was credible." The court noted the results of the APS investigation; however, it still concluded that the evidence weighed in favor of concluding that Ed "has acted reasonably as the Trustee." As the District Court was in the position to

9

weigh the evidence and judge the credibility of witnesses, I would hold that these findings were not clearly erroneous.

¶18    I also disagree with the Court's holding requiring the removal of Ed as trustee. The trustor's intent controls the interpretation of a trust agreement, and "we attempt to discern the trustor's intent from the language of the entire trust agreement, rather than from a particular word or phrase." *Bair*, ¶ 32. It is clear from the trust documents in this case that the trustor intended for family to be in charge of administering the trust. Having named Ed as the co-trustee, eventually the sole trustee after Valma's resignation, the trustor was aware that a residuary beneficiary was responsible for administering the trust for Valma's benefit during her lifetime. This was clearly his intention despite the inherent conflict of interest involved. Additionally, the trustor listed several other family members to serve as successor trustees should any trustee resign or become unable to serve. This Court should not circumvent the trustor's clear intention to have a family member trustee.

¶19    Additionally, as trustee, Ed has dual responsibilities towards the primary and residuary beneficiaries of the trust. Though the primary purpose of the trust is to provide for Valma during her lifetime, the trust specifically sets out an additional purpose of providing the residue to the remaindermen. As trustee, if Ed depleted the principal of the trust at Valma's request, without ascertaining that such spending is necessary to "sufficient[ly]" provide for her "support, maintenance and care," he could incur liability to the remainder beneficiaries.

¶20    Here, the District Court made findings that Ed "reasonably retained the [vacant] lots as the Trust has had sufficient liquid assets to pay its expenses and make income and principal distributions"; "reasonably made the decision to decrease the amount of distributions after he was no longer receiving Valma's [social security check]"; "never refused to pay any verified medical expense"; "was reasonably

10

concerned as to the level of care and whether the cost for the additional caregivers was necessary"; and "[w]ithout additional information, including medical records, [he] could not reasonably determine that any additional cost of the caregivers was appropriate."

¶21 I disagree with the Court's characterization that the District Court concluded Ed could choose a medical professional for Valma and require her to live in Montana to receive trust funds. Opinion, ¶ 9. The District Court conclusion referenced by the Court states in full:

> Because Valma's medical and care needs are important, the Court orders [Valma's conservator], to the extent she believes Valma needs additional medical care or caregivers, to provide Ed with all documentation regarding Valma's medical condition, and medical and caregiver needs. *To the extent Ed is not persuaded by the medical records*, Ed can choose a physician to evaluate Valma and make a recommendation as to the appropriate care and possible return to Montana, if such costs in Montana would be more reasonable *and still meet the "sufficient" standard* for discretionary distributions of Trust principal at that time. [Emphasis added.]

This finding immediately follows conclusions that Valma, through her conservator, has failed to provide any medical records or bills to substantiate the significant increase in requested funds. Contrary to the Court's interpretation that this conclusion makes Ed "the arbiter of where she lives and who provides her medical care," Opinion, ¶ 9, I would hold it was reasonable for the court to require some evidence to substantiate the claimed expenses given the trustee's duty to ensure that trust funds are being used for their designated purpose, and to allow for the possibility that the same level of care could be obtained for less money in Montana in order to fulfill the primary trust purpose of providing for Valma for her lifetime.

¶22 Having concluded the court's findings of fact were not clearly erroneous, I would also hold that the District Court did not abuse its discretion in making these conclusions in light of all the evidence presented. Based on the court's findings of fact and conclusions of law, I would uphold the District

11

Court's conclusion that Ed did not violate his duties as trustee, and its decision not to remove Ed as trustee.

/S/ JIM RICE

12